[Cite as *State v. Taylor*, 2016-Ohio-2765.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 15CA010779 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANTHONY TAYLOR | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 14CR089196 |

DECISION AND JOURNAL ENTRY

Dated: May 2, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Anthony Taylor, appeals the judgment of the Lorain County Court of Common Pleas convicting him of unlawful sexual conduct with a minor. For the reasons that follow, we affirm.

I.

{¶2} The Lorain County Grand Jury indicted Taylor on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), (B)(1) a felony of the fourth degree. The indictment arose from the mother of Z.B. finding text messages between Z.B. and Taylor suggesting that they had sexual intercourse. The matter proceeded to a bench trial in which the parties disputed whether the sexual relations between Taylor and Z.B. occurred in January or early February 2014 when Taylor was over 18 years old or before December 13, 2013, when Taylor was 17 years old. In both timeframes, Z.B. was 13 years old. After receiving evidence, the trial judge found Taylor guilty of unlawful sexual conduct with a minor. The trial court

subsequently sentenced Taylor to a three-year term of community control sanctions and classified him as a Tier II sexual offender.

{¶3} Taylor filed this timely appeal, which presents a single assignment of error for our review.

II.

**Assignment of Error**

**The Appellant's conviction is against the manifest weight of the evidence because the victim's testimony given a specific offense date of January 10th, 2014 was impeached and controverted by four separate defense witnesses. The defense contention that the offenses occurred in 2013, was also not controverted by state witnesses outside of the victim's testimony. There was also independent evidence supporting the defense contentions that was not controverted.**

{¶4} In his sole assignment of error, Taylor argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶5} When reviewing whether a criminal conviction is supported by the manifest weight of the evidence, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds in "exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, citing *Otten* at 340, when the evidence "weighs heavily against the conviction," *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In considering evidentiary conflicts, we have previously noted that the trier of fact "is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly," *State v. Johnson*, 9th Dist.

Summit No. 25161, 2010-Ohio-3296, ¶ 15, and "'has the right to place considerable weight on the testimony of the victim,'" *State v. Johnson*, 9th Dist. Lorain No. 15CA010746, 2016-Ohio-58, ¶ 11, quoting *State v. Felder*, 9th Dist. Lorain No. 91CA005230, 1992 WL 181016, *1 (July 29, 1992). Additionally, a conviction is not subject to reversal on manifest weight grounds simply because the defendant "offered his own self-serving contradictory testimony," *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15, or because the trier of fact "'chose to believe the State's version of events,'" *State v. Feliciano*, 9th Dist. Lorain No. 09CA009595, 2010-Ohio-2809, ¶ 50, quoting *State v. Morten*, 2d Dist. Montgomery No. 23103, 2010-Ohio-117, ¶ 28.

{¶6} Here, Taylor was indicted on unlawful sexual conduct in violation of R.C. 2907.04(A), which provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." On appeal, Taylor challenges the weight of the evidence regarding his age at the time of the sexual intercourse between him and Z.B. and asserts that the evidence indicates he was less than 18 years old when the intercourse occurred. After a thorough review of the record, we cannot agree.

{¶7} Z.B. testified as follows regarding the timeframe for her sexual relations with Taylor:

Q:     Now, you said that you had sexual intercourse with [Taylor]. Right?

A:     Umm-hmm. Yes.

Q:     Do you remember when that was?

A:     It was around January.

Q:      That would be January of 2014?

A:      Yeah.

Q:      Do you remember a certain date?

A:      First time I would say January 10th.  Then the second time I don't remember.

Q:      Was the second time before or after your [14th] birthday?

A:      The second time was before.  Both of them were before my birthday.

Z.B. further indicated that the first instance of intercourse occurred at the house of Taylor's mother and that the date of January 10, 2014 sticks out to her because she and her brother burned some food that day and got into trouble with her mother.  During her testimony, Z.B. first stated that this instance of intercourse occurred in Taylor's bedroom.  However, after later reviewing a text message from Z.B. to Taylor in which she said that the first time occurred in the dining room, Z.B. stated that the first instance of intercourse occurred in the dining room of the house while the second instance occurred in Taylor's bedroom.

{¶8}    On cross-examination, Z.B. denied having sexual intercourse with Taylor in the autumn of 2013 and she only admitted to kissing him before January 2014.  She was also confronted with a December 8, 2013 text message from Taylor to her stating, "[m]e and u need 2 kick it like whn u stayed the night [sic]."  Z.B. denied that this text message referred to a sexual encounter between the two.

{¶9}    Detective Tabitha Angello of the Lorain Police Department investigated the incidents of sexual intercourse between Taylor and Z.B.  According to Detective Angello's testimony, she interviewed Taylor, who admitted to having intercourse with Z.B. on three different occasions.  Taylor stated that the first instance of intercourse occurred in November or

December 2013 at the house of Z.B.'s mother but he was unable to provide details for the second or third instance.

{¶10} Taylor offered the testimony of several of his family members who indicated that there was a party at his mother's house on January 10, 2014 and that most of the attendees congregated in the dining room. His mother indicated that the party was to celebrate her birthday, which was actually two days later. She testified that the birthday party was held early because Z.B.'s grandfather had to work on January 12, 2014 and she wanted him to be able to celebrate with her. Moreover, the family members all testified that Taylor was at the party while Z.B. was not. One of Taylor's sisters further testified that she and Z.B. were together at the house of Z.B.'s mother during the party and that she never saw Z.B. leave.

{¶11} The State elicited testimony on cross-examination that tended to impeach the testimony of Taylor's family members. Taylor's mother acknowledged that she did not mention the January 10, 2014 party during a police interview, but she said that she was never asked about certain dates. The testimony of Taylor's grandfather, meanwhile, tended to contradict the testimony of Taylor's mother regarding the basis for holding the birthday party on January 10, 2014. The grandfather indicated that he attended the birthday party on January 10, 2014 and that he went to the house on January 12, 2014 for another birthday gathering. He never explained whether he got out of the work obligations that, according to Taylor's mother, prevented having the party on January 12, 2014. And, one of Taylor's sisters, while stating that no one told her what to say in court, acknowledged that her family members discussed the pending charge against Taylor and what was going to occur in court.

{¶12} Taylor testified on his own behalf. He addressed the interview with Detective Angello and confirmed that he acknowledged having sexual intercourse with Z.B. "two or three

times" and that he said the first instance occurred in "November or December." Taylor testified at first that he was not sure of when in December the first instance occurred but then backtracked as follows:

> Q: Do you have any knowledge when in December it would have been?
>
> A: No, I don't.
>
> Q: Did any of those [instances of sexual intercourse] occur after December 14th [Taylor's 18th birthday]?
>
> A: No, sir.

Taylor further testified that all the instances of sexual intercourse occurred in the house of Z.B.'s mother in the dining room, which was set up as a sitting area with couches. Taylor was also confronted with the same December 8, 2013 text message he sent to Z.B. After first stating he could not remember whether the text message referred to sexual intercourse between him and Z.B., Taylor indicated that he "could have" been referring to that.

**{¶13}** The record does not reflect that the trier of fact lost his way in determining that Taylor was over 18 years old when he had sexual intercourse with Z.B. Z.B. testified to two instances of sexual intercourse that occurred before her 14th birthday in February 2014 and after Taylor's 18th birthday in December 2013. Although Taylor offered testimony suggesting that the two did not have sexual intercourse on January 10, 2014, the trier of fact was free to reject that evidence, especially in light of the State's impeachment of it. We further note that each of Taylor's witnesses was related to him and that none of the three non-family members who were purportedly at the January 10, 2014 party testified. The trier of fact could also reject Taylor's testimony as self-serving, including, most notably, his statement that he could not recall the exact dates of the parties' sexual intercourse, except that all the instances of intercourse occurred before his 18th birthday on December 13. *See State v. Jacobs*, 9th Dist. Summit No. 27545,

2015-Ohio-4353, ¶ 47 (determining that conviction was not against the manifest weight of the evidence where the defendant offered self-serving testimony in his own defense that was inconsistent).

{¶14} Even accepting Taylor's version of events regarding the January 10, 2014 incident, his witnesses did not specifically address Z.B.'s testimony that she and Taylor had sexual intercourse on another date later in the month or in early February before her 14th birthday. Indeed, regarding this second instance of sexual intercourse, the only evidence is what "she said" (that the second instance of intercourse occurred during the January 11 to February 6, 2014 timeframe) and what "he said" (that all the instances of intercourse occurred before December 13, 2013). Within the realm of sexual offenses, we have previously determined that if a case amounts to a "he said, she said" dispute, we will not second-guess the trier of fact's resolution of that dispute where the defendant "has not set forth any corroborating evidence as to why this Court should disrupt that [resolution], other than reiterating to us what 'he said.'" *State v. Martinez*, 9th Dist. Summit No. 24037, 2008-Ohio-4845, ¶ 17.

{¶15} In sum, we conclude that the trier of fact did not lose his way in determining that Taylor was over 18 years of age when he had sexual intercourse with Z.B. Accordingly, we determine that Taylor's conviction is not against the manifest weight of the evidence and we overrule Taylor's sole assignment of error.

### III.

{¶16} Having overruled Taylor's assignment of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
CANNON, J.
CONCUR.


APPEARANCES:

JOHN D. TOTH, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.